Filed 7/12/22  Westbrook v. Chen CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| VLADIMIR WESTBROOK,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ANGELA HANXU CHEN,<br><br>    Defendant and Respondent. | H049189<br>(Santa Clara County<br>Super. Ct. No. 20CV366526) |

Vladimir Westbrook sued Angela Hanxu Chen in May 2020, alleging five claims. Chen's demurrer to the original complaint was sustained with leave to amend.  The order sustaining the demurrer expressly stated that any amendment by Westbrook was limited to the three causes of action for breach of contract, breach of duty of loyalty, and breach of implied covenant of good faith and fair dealing that were alleged in the original complaint.  Westbrook filed a first amended complaint to which Chen demurred.  On May 21, 2021, the court entered an order striking the first amended complaint without leave to amend, concluding that in filing the amended pleading, Westbrook had violated the terms of the prior order granting leave to amend by asserting new and different claims.

On appeal, Westbrook contends that the trial court erred by striking the first amended complaint without leave to amend on its own motion.  He argues, inter alia, that

court's order striking his pleading violated his right to due process. We conclude that Westbrook forfeited his due process challenge and that, in any event, the contention lacks merit. We reject Westbrook's other claims of error. Accordingly, we will affirm the order striking the first amended complaint.

## I. PROCEDURAL BACKGROUND

### A. Initial Complaint and Demurrer

On May 12, 2020, Westbrook, as a self-represented litigant, filed a complaint against Chen. The claims arose out of a dispute between Chen and Westbrook Group Inc., dba Westbrook Realty (WBREA). In December 2018, Chen entered into an independent contractor agreement with WBREA (hereafter, the IC Agreement). In or about February 2019, Chen began working with clients, the Shivarudrappas (the Client), and a transaction involving the Client closed in December 2019. Thereafter, WBREA and Chen had a dispute concerning commissions on that transaction. Westbrook alleged that the dispute was resolved on or about January 17, 2020, through the execution of a document identified in the complaint as a "Settlement Agreement." That document, the "Settlement Agreement," was a check attached to the complaint dated January 17, 2020, from WBREA to Chen in the amount of $6,050.00. On the check stub, there appeared language reciting that the parties had reached an oral agreement; WBREA issued the check "as an accord of the disputed commission fee amount"; "acceptance of the check shall constitute satisfaction"; and "[t]he parties hereby abandon all claims against each other which could arise from there [*sic*]." Westbrook alleged further that Chen breached the "Settlement Agreement" in April 2020 by filing a complaint for arbitration to relitigate the claims previously settled. Thereafter, any claims of WBREA against Chen were "transferred" to Westbrook.

There were five causes of action alleged in the complaint: (1) breach of written contract, i.e., the "Settlement Agreement" between WBREA and Chen; (2) breach of duty of loyalty by making a false demand that WBREA pay a Client credit in an inflated

2

amount; (3) breach of implied covenant of good faith and fair dealing relative to the "Settlement Agreement"; (4) bad faith denial of the existence of contract (i.e., the "Settlement Agreement"); and (5) fraud by "attempt[ing] to extort from WBREA funds by willfully making false statements with full knowledge [of] them to be false."

Chen filed a demurrer to the complaint. She asserted, inter alia, that (1) there was no " 'settlement agreement' " because Civil Code section 1526, subdivision (a) "prohibit[ed] 'payment in full' language that is not clearly written upon the check itself"; (2) there was no written assignment between WBREA and Westbrook; (3) the claims, to the extent they were based upon Chen's filing of a complaint for arbitration, were barred by the litigation privilege (Civ. Code, § 47, subd. (b)); and (4) the third through fifth causes of action were defective because the claimant was a third-party corporation, WBREA, and tort claims are generally not assignable.

Westbrook opposed the demurrer. In that opposition, Westbrook argued that Chen's demurrer should be overruled in its entirety, or, alternatively, that the court should grant leave to amend for Westbrook to file a proposed first amended complaint that was attached as an exhibit to the opposition. The proposed pleading named two additional defendants and alleged 20 causes of action.

On January 11, 2021, the court sustained the demurrer as to each cause of action. The court sustained the demurrer to the first, second, and third causes of action on the ground that the litigation privilege under Civil Code section 47, subdivision (b) barred those claims, but it granted leave to amend. As to the fourth and fifth causes of action, the demurrer was sustained without leave to amend. In its order, the court made clear that leave to amend was granted as to only the first through third causes of action alleged in the complaint and only as against Chen. The court stated that "[a]ny other amendment, whether to add causes of action or new parties, requires approval of the court upon noticed motion." (Hereafter, the January 11, 2021 order is referred to as the Prior Order.)

3

## B.     First Amended Complaint and Demurrer

On January 14, 2021, Westbrook, as a self-represented litigant, filed a first amended complaint against Chen.  The amended pleading contained numerous factual allegations that were new, including matters occurring after the filing of the original complaint.  It was alleged that, as a result of entering into the December 2018 independent contractor agreement (hereafter, the IC Agreement), Chen gained full access to WBREA's trade secrets, proprietary information, and files, and she owed a fiduciary duty to WBREA while she was "associated with WBREA and thereafter."  "Chen violated numerous provisions of [the IC Agreement]."  She concealed material facts regarding transactions that she engaged in while she was associated with WBREA.  After Chen "disassociated herself from WBREA" in January 2020, she became associated with, and wrongfully delivered WBREA's property to, a new brokerage firm (hereafter, "Sand Hill").[1]  Westbrook alleged further that Chen, after separating herself from WBREA, "*failed and refused* to deliver and return WBREA's proprietary information and files" (original italics) and misappropriated them for her own use and for Sand Hill's benefit.  And in June 2020 (after the filing of the original complaint), Chen closed escrow (under Sand Hill) on a transaction involving a WBREA client, but she did not disclose the transaction or its proceeds to WBREA.

Westbrook alleged three causes of action in the first amended complaint:  breach of contract, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing.  He alleged that Chen breached the IC Agreement by failing to return WBREA's "Property"—defined in the first amended complaint as WBREA's proprietary information and files—misappropriating that "Property," using the "Property" for Sand Hill's benefit, and soliciting prospective and existing clients of WBREA. The same

---

[1] Westbrook alleged that this brokerage firm was "Sand Hill Real Estate And Investment Inc., aka Realty One Group Sand Hill, aka Realty One Group World Properties, which on its turn [*sic*] is associated with REALTY ONE GROUP, INC."

4

alleged actions of Chen also furnished the grounds for Westbrook's breach of fiduciary duty and breach of implied covenant claims.

Chen filed a demurrer to the first amended complaint. She asserted, inter alia, that Westbrook's amended pleading (1) contravened the court's Prior Order by alleging new claims arising from different matters than those covered in the original complaint; (2) alleged claims arising from purported facts after Chen was disassociated from WBREA (while the original complaint arose out of purported facts occurring during her relationship with WBREA); and (3) included a claim of breach of duty of loyalty that resided with WBREA and could not be individually asserted by Westbrook. Chen asserted that "the entire pleading filed in this action must be dismissed and the demurrer [sustained] without further leave to amend."

Westbrook filed opposition, arguing that Chen's demurrer should be overruled. Westbrook, inter alia, challenged Chen's assertions that (1) the allegations in the first amended complaint differed completely from those in the original complaint, and (2) the filing of the first amended complaint violated the court's Prior Order.

The court issued a tentative ruling in which the court indicated it intended to strike the first amended complaint on the court's own motion because the pleading was not in conformity with the court's Prior Order sustaining the demurrer to the original complaint. No party contested the tentative ruling or appeared at the hearing. The court therefore adopted the tentative ruling[2] and entered a formal order on May 21, 2021.

In the formal order (the Order), the court made reference to, and quoted from the Prior Order in which the court had cautioned Westbrook that although he was granted leave to amend the first through third causes of action, any amended pleading that went

---

[2] This court, on its own motion under Evidence Code section 459, after giving the parties an opportunity to state their positions concerning the matter, took judicial notice of a minute order dated May 20, 2011. In that minute order, the court recited its tentative ruling, noted that no party had challenged the tentative ruling or had appeared at the hearing, and the court adopted the tentative ruling.

beyond the three previous causes of action or added defendants would be improper as it would require approval of the court upon noticed motion. In addressing the first amended complaint, the court concluded that the pleading had "abandon[ed] the factual allegations of the original complaint. The [first amended complaint made] no mention of a settlement agreement, the filing of an arbitration complaint, or self-dealing transactions. Instead of claims for breach of contract and breach of the duty of loyalty predicated solely on the existence of a settlement agreement and the filing of an arbitration complaint, the [first amended complaint] for the first time allege[d] that [Chen] breached an 'Independent Contractor Agreement' and breached a (newly alleged) fiduciary duty by failing to return 'proprietary information and files' after her termination. [Citation.] There is no mention of this in the original complaint . . . . [¶] The [first amended complaint] cannot reasonably be understood as an amendment of the first, second and third causes of action alleged in the original complaint, which were the only causes of action [Westbrook] was given leave to amend in the Court's [P]rior [O]rder. It is instead clearly an attempt by [Westbrook] to allege three wholly new claims in place of those previously alleged[,] in violation of the Court's January 11, 2021 Order."

Based upon its analysis, the court on its own motion struck the first amended complaint because it "was not filed in conformity with the January 11, 2021 Order of the Court." The court further denied leave to amend, indicating that if Westbrook desired to file an amended pleading with claims unrelated to those alleged in the original complaint, he should file a new action or a proper motion for leave to amend.

Westbrook filed a timely notice of appeal from the Order.

## II. DISCUSSION

### A. Applicable Law

The court, in sustaining a demurrer, "may grant leave to amend the pleading upon any terms as may be just . . . ." (Code Civ. Proc., § 472a, subd. (c).)[3] When the court sustains a demurrer with leave to amend, in granting such leave, the court "is not [] sanctioning [] a particular amendment which the pleader has submitted to the trial court. Rather, . . . such granting of leave to amend must be construed as permission to the pleader to amend the cause of action which he [or she] pleaded in the pleading to which the demurrer has been sustained." (*People ex rel. Dept. Pub. Wks. v. Clausen* (1967) 248 Cal.App.2d 770, 785.) Thus, as a panel of this court explained: "[W]hen a trial court sustains a demurrer with leave to amend, the scope of the grant of leave is ordinarily a limited one. It gives the pleader an opportunity to cure the defects in the particular causes of action to which the demurrer was sustained, but that is all. [Citation.] 'The plaintiff may not amend the complaint to add a new cause of action without having obtained permission to do so, unless the new cause of action is within the scope of the order granting leave to amend.' [Citation.]" (*Community Water Coalition v. Santa Cruz County Local Agency Formation Com.* (2011) 200 Cal.App.4th 1317, 1329 (*Community Water Coalition*).) The filing of an improper amended pleading of this nature may be challenged either by a motion to strike or by demurrer. (*Ibid.* [challenge by motion to strike]; *Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1023 [challenge by demurrer] (*Harris*); *Pagett v. Indemnity Ins. Co. of North America* (1942) 54 Cal.App.2d 646, 649 [amended complaint that sets up "a new and different cause of action" is subject to motion to strike].)

The court may strike a pleading by motion of a party or on the court's own motion. (§ 436.) The trial court is authorized to "[s]trike out all or any part of any

---

[3] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

7

pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court." (§ 436, subd. (b); see also *Ricard v. Grobstein, Goldman, Stevenson, Siegel, LeVine & Mangel* (1992) 6 Cal.App.4th 157, 162 [court may strike pleading "not filed in conformity with its prior ruling"].) The court may do so "upon a motion made pursuant to Section 435, or at any time in its discretion, and upon terms it deems proper." (§ 436.)

A trial court order is entitled to a presumption of correctness, thereby placing the burden on the appellant to demonstrate error. (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 528.)

A determination to strike a pleading under section 436 is reviewed for abuse of discretion. (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 612 (*Leader*).) "An order striking all or part of a pleading under Code of Civil Procedure section 435 et seq. is reviewed for abuse of discretion. [Citation.] This means that the reviewing court will disturb the ruling only upon a showing of a ' " 'clear case of abuse' " ' and a ' " 'miscarriage of justice.' " ' [Citations.] Discretion is abused only when, in its exercise, the trial court ' "exceed[ed] the bounds of reason, all of the circumstances before it being considered." ' [Citation.]" (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1282 (*Quiroz*).)

### B. No Error by the Trial Court

#### 1. Due Process Challenge

The primary challenge raised by Westbrook to the Order is that the court struck the first amended complaint without advance notice to him of the court's "[s]ua [s]ponte [m]otion." He argues that because he "did not have a fair opportunity under all circumstances to respond," he was deprived of his right to due process.

##### a. Due Process Challenge Is Forfeited

Westbrook did not challenge the court's tentative ruling in which the court indicated that it intended to strike the first amended complaint under section 436. Nor

8

did he appear in court to argue the matter. And the record does not show that he filed a post-hearing motion, such as a motion for reconsideration under section 1008, to challenge the Order. (See *Leibert v. Transworld Systems, Inc.* (1995) 32 Cal.App.4th 1693, 1698 [challenge to sustaining of demurrer on ground that plaintiff "failed to plead exhaustion of administrative remedies" rejected, inter alia, because plaintiff did not "seek[] reconsideration of the ruling"].) At any of these three junctures, Westbrook could have raised the argument to the trial court that he believed the court's striking of his first amended complaint on its own motion under section 436 violated his right to due process. He did not do so.[4] Westbrook's failure to object below to this alleged defect precludes him from raising the challenge here.

" 'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method . . . . The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver . . . . Often, however, the explanation is simply that it is *unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial.' [Citation.]" (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1, original italics.) Although the failure to raise an objection in the trial court is often referred to as a waiver, strictly speaking, it is a forfeiture of the right to assert the objection on appeal. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2, superseded on other grounds by statute as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962.)

---

[4] Westbrook filed a motion for leave to amend shortly after entry of the May 21, 2021 Order. In that motion, Westbrook did not mention any concern regarding the procedural manner in which the court on its own motion had struck the first amended complaint.

This forfeiture rule applies to due process challenges that are not asserted at the trial level. (*Bettencourt v. City and County of San Francisco* (2007) 146 Cal.App.4th 1090, 1101.) Thus, for example, appellate courts have held forfeited due process challenges not asserted at the trial level relating to (1) a provision tolling the statute of limitations for initiation of disciplinary proceedings (see *ibid.*); (2) evidentiary rulings (see *Hoffmann v. Young* (2020) 56 Cal.App.5th 1021, 1028); (3) a statute (Civ. Code, § 1356) concerning the amendment by homeowners' associations of covenants, conditions and restrictions (see *Fourth La Costa Condominium Owners Assn. v. Seith* (2008) 159 Cal.App.4th 563, 585); (4) claimed inadequate notice before revocation of driver's license pursuant to Vehicle Code section 13351.5 (see *In re Grayden N.* (1997) 55 Cal.App.4th 598, 605); and (5) claimed lack of notice to the custodial de facto parent before removal of the dependent child from the home (see *In re Cynthia C.* (1997) 58 Cal.App.4th 1479, 1491).

Despite his having the opportunity to do so—before the hearing after the release of the court's tentative ruling, at the hearing, which he elected not to attend, or after the hearing by a motion challenging the Order—Westbrook failed to argue to the trial court that its order striking the first amended complaint under section 436 was made in violation of his due process rights. He has forfeited this appellate challenge. (See *In re Cynthia C.*, *supra*, 58 Cal.App.4th at p. 1491.)[5]

### b.    Due Process Claim is Without Merit

Proceeding as if the claim were not forfeited, we consider the merits of Westbrook's assertion that the court's order striking the first amended complaint violated

---

[5] We requested that the parties submit supplemental letter briefs addressing two questions: (1) whether Westbrook asserted before the trial court that the order striking the first amended complaint violated his due process rights; and (2) assuming Westbrook did not raise the issue below, whether it was forfeited (waived) on appeal. We have received and have considered the parties' letter briefs.

his right to due process. Such a due process contention is an issue of law for which the de novo standard of review applies. (*In re A.B.* (2014) 230 Cal.App.4th 1420, 1434.)

Westbrook argues that his due process rights were violated because the trial court issued an "[i]mmediate [o]rder" based upon its "[s]ua [s]ponte [m]otion" of which he received no notice. His premise that the court entered the Order striking the first amended complaint without prior notice to him is flawed. The trial court, in fact, through the posting of its tentative ruling, gave notice to the parties (on the afternoon of May 19, 2020, the court day preceding the hearing on the demurrer) of its intention to strike the first amended complaint pursuant to section 436.[6] The court therefore gave prior notice that it contemplated striking Westbrook's amended pleading, as later accomplished in the Order.

Further, Westbrook, through the filing and service of Chen's demurrer, received full notice of the *substance* of the underlying basis of the court's later Order striking the first amended complaint, namely, that the claims in the first amended complaint were substantially different from those alleged in the original complaint. Chen specifically argued in her demurrer that the filing of the first amended complaint constituted a violation of the court's Prior Order because the amended pleading alleged new claims arising from matters different from those alleged in the original complaint. Chen also

---

[6] Under the California Rules of Court, if the superior court elects to employ a tentative ruling system for civil law and motion matters that requires a party to give notice of intent to appear at the hearing, the superior "court must make its tentative ruling available by telephone and also, at the option of the court, by any other method designated by the court, by no later than 3:00 p.m. the court day before the scheduled hearing. . . . If the court has not directed argument, oral argument must be permitted only if a party notifies all other parties and the court by 4:00 p.m. on the court day before the hearing of the party's intention to appear." (Cal. Rules of Court, rule 3.1308(a)(1).) The superior court below elected to adopt this tentative ruling procedure, as provided in its local rules. (See Super. Ct. Santa Clara County, Civ. Rule 8E.) We take judicial notice on our own motion of Civil Rule 8 of the Santa Clara County Superior Court Local Rules. (See Evid. Code, §§ 452, 459.)

11

argued that, in contrast to the original complaint that consisted of claims arising from a commission dispute while Chen was affiliated with WBREA, the new claims alleged in the first amended complaint arose out of matters occurring *after* she was no longer associated with WBREA. And Westbrook *specifically responded* in his opposition to demurrer to the assertion that the filing of the first amended complaint violated the Prior Order, arguing that the claims in his first amended complaint were consistent with, and did not completely differ from, those alleged in the original complaint.

Moreover, Westbrook was on notice through Chen's demurrer of the requested result that ultimately occurred through the court's issuance of its Order. In her demurrer, Chen argued that Westbrook had violated the express language of the Prior Order, "the Demurrer to the [first amended complaint] should be sustained without leave to amend, and a judgment dismissing the action should be entered." In its Order under section 436 striking the first amended complaint without leave to amend, the trial court effectively provided the same relief that had been requested by Chen in her demurrer. And, as noted above, prior to the hearing on the demurrer, the parties, Westbrook and Chen, were on notice, through the posting of the tentative ruling, that the court intended to strike the first amended complaint without leave to amend pursuant to section 436. (See Cal. Rules of Court, rule 3.1308(a)(1); Super. Ct. Santa Clara County, Civ. Rule 8E.)

Under the circumstances presented here, Westbrook's due process rights were not violated; he received prior notice of the court's intention to strike the first amended Complaint before the Order issued. And he was afforded the opportunity—of which he availed himself in his opposition to the demurrer—to address the grounds upon which the striking of the first amended complaint were based, namely, that the filing of the new pleading violated the Prior Order because it alleged new claims.

The fact that the trial court's ruling was based upon its discretionary authority to strike at any time all or portions of pleadings pursuant to section 436, subdivision (b) while the matter pending before it was a demurrer to the first amended complaint, does

12

not suggest error. In this regard, *CPF Agency Corp. v. R&S Towing* (2005) 132 Cal.App.4th 1014 (*CPF Agency*) is instructive. There, the defendant filed a motion to dismiss the complaint under section 396,[7] contending that the plaintiff's claims were preempted by federal law. (*CPF Agency*, *supra*, at p. 1020.) The plaintiff contended on appeal that because the defendant's motion was an unauthorized, untimely motion to strike under section 435, the trial court erred in striking certain causes of action of the complaint. (*CPF Agency*, *supra*, at p. 1020.) The appellate court found the plaintiff's procedural objection unmeritorious, concluding that a trial court has the authority to consider a motion irrespective of how it is labeled, and it has the power to strike a pleading at any time under section 436. (*CPF Agency*, *supra*, at pp. 1020-1021.)[8] The court explained: " 'The proposition that a trial court may construe a motion bearing one label as a different type of motion is one that has existed for many decades. "The nature of a motion is determined by the nature of the relief sought, not by the label attached to it. . . ." [Citation.] . . . The principle that a trial court may consider a motion regardless of the label placed on it by a party is consistent with the court's inherent authority to manage and control its docket.' [Citations.] [¶] Under these principles, the court had inherent authority to treat [the] defendant's motion as a motion to strike, and to consider it on the merits even though the motion was filed after [the] defendant had filed its responsive pleading. Code of Civil Procedure section 436 grants the trial court discretion

---

[7] "If the superior court lacks jurisdiction of an appeal or petition, and a court of appeal or the Supreme Court would have jurisdiction, the appeal or petition shall be transferred to the court having jurisdiction upon terms as to costs or otherwise as may be just, and proceeded with as if regularly filed in the court having jurisdiction." (§ 396, subd. (b).)

[8] It bears noting here that, irrespective of the fact that Chen argued below that her demurrer to the first amended complaint should be sustained without leave to amend and the action dismissed, she had the option of challenging Westbrook's amended pleading as being in violation of the Prior Order by either demurrer (*Harris*, *supra*, 185 Cal.App.4th at p. 1023) or by motion to strike (*Community Water Coalition*, *supra*, 200 Cal.App.4th at p. 1329).

13

to consider striking improper matter from pleadings 'at any time in its discretion.' " (*Ibid.*)

The authorities relied on by Westbrook do not support his claim that the entry of the Order constituted a violation of his due process rights. In *In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 291, the appellate court found that the trial court had violated the husband's due process rights when it "abruptly ended the [marital dissolution] trial before [the husband] had finished his presentation, cutting off any opportunity for rebuttal evidence . . . or argument of counsel." *In re Marriage of Carlsson* has no application here.

In *Moore v. California Minerals Products Corp.* (1953) 115 Cal.App.2d 834, 835 (*Moore*), attorneys sought recovery of $8,594.32 in legal fees, while the client, in its answer, admitted it had engaged the attorneys, had agreed to pay them $1,000 in fees and $44.32 in expenses, and that it owed a balance of $594.32. At the trial, after the parties' counsel provided opening statements consistent with their pleadings, the trial court awarded the plaintiffs the full amount prayed in their complaint without hearing evidence. (*Id.* at pp. 835-836.) The *Moore* court held that the trial court's granting judgment on the pleadings sua sponte without giving defense counsel the opportunity to address a claimed pleading deficiency was error and deprived the defendant of due process. (*Id.* at p. 836.) It reasoned: "In our research we have not discovered another case in which judgment was rendered upon a point of law raised by the court with no warning of counsel and no opportunity given to ward off the blow. Elementary principles of due process support our conclusion that if, during a trial, the court, sua sponte, unearths a point of law which it deems to be decisive of the cause, the party against whom the decision impends has the same right to be heard before the decision is announced that he has to produce evidence upon the issues of fact. Denial of that opportunity deprived defendant of a substantial right to which it was entitled by virtue of the guarantee of due process. [Citations.]" (*Id.* at p. 837, italics omitted.)

14

In contrast to the circumstances in *Moore*, this is not an instance in which Westbrook received "no warning" that his first amended complaint might be viewed by the court as defective because it violated the Prior Order. Chen's demurrer specifically raised this issue, and Westbrook addressed the point in his opposition. And the trial court, before entering the Order, advised the parties in its tentative ruling that it intended to strike the first amended complaint under section 436 because it violated the Prior Order. *Moore* does not support Westbrook's claim that the Order was entered in violation of his due process rights.

In *In re Marriage of Straczynski* (2010) 189 Cal.App.4th 531, 533 (*Straczynski*), the conservator for the wife, Evelyn, appealed an order dismissing her petition for dissolution of marriage. Shortly after Evelyn filed the petition to dissolve the lengthy marriage, she was placed in an assisted living facility. (*Ibid.*)[9] Approximately two years later, the trial court issued an order requiring that the husband, Charles, pay, as spousal support, all of Evelyn's care and medication expenses at a minimum of $500 per day. Nearly four years into the proceedings, Charles, as a self-represented litigant, filed a motion to dismiss the proceedings on the basis that the parties—although Charles lived out-of-state and Evelyn was still in a care facility—had reconciled. (*Id.* at p. 535.) Evelyn, through her conservator, opposed the motion, arguing that there was no legal or factual basis for it, and that a dismissal would result in the termination of orders for Evelyn's support. (*Id.* at p. 536.) After a hearing, the court denied Charles's motion to dismiss, concluding that it could not find there had been a reconciliation. (*Id.* at p. 537.) At the hearing, however, the court granted its own motion to dismiss after concluding that dismissal of the dissolution proceedings would be in Evelyn's best interests because of her "advanced dementia, financial situation, and current relationship with Charles." (*Id.* at p. 533; see also *id.* at pp. 536-537.)

_____

[9] Charles had alleged in his response that Evelyn suffered from Alzheimer's Disease and dementia. (*Straczynski*, *supra*, 189 Cal.App.4th at p. 533.)

15

The appellate court held that the family court's sua sponte dismissal violated the parties' rights to due process because the court "did not provide notice and an opportunity to respond before it dismissed the dissolution proceedings on its own motion." (*Straczynski*, *supra*, 189 Cal.App.4th at pp. 538-539.) It reasoned that after it denied Charles's motion to dismiss that was based upon the claim that the parties had reconciled, the family court dismissed the proceedings sua sponte and without notice upon entirely different grounds that were stated for the first time at the same hearing. (*Id.* at pp. 538-539.)[10] In contrast, in the present case, the basis for the trial court's sua sponte order striking the first amended complaint was *identical to* one of the reasons given by Chen in her proceeding requesting that the demurrer to that pleading be sustained without leave to amend—namely, that Westbrook's filing of the amended pleading had violated the Prior Order because it contained new claims not alleged in the original complaint.[11]

---

[10] The new grounds upon which it dismissed the case sua sponte, as recited by the appellate court, were "[s]pecifically, . . . because (1) it was not in Evelyn's best interest to divorce Charles; (2) that the trial court didn't 'think there's going to be any evidence presented' allowing it to find irreconcilable differences; and (3) the trial court believed it remembered case law stating that a court 'can't give a divorce if there's a conservator.' " (*Straczynski*, *supra*, 189 Cal.App.4th at p. 538.)

[11] Similarly, other cases cited by Westbrook in support of his due process claim do not assist his position. (See, e.g., *Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 561, fn. 7 [discretionary dismissal for failure to diligently prosecute under former § 583, subd. (a) upon court's own motion requires notice]; *Payne v. Superior Court* (1976) 17 Cal.3d 908, 914 [prisoners' rights to due process and equal protection in defending civil suits]; *Department of Forestry & Fire Protection v. Howell* (2017) 18 Cal.App.5th 154, 174 [procedure of conducting hearing, scheduled one week before multimonth trial, in which court did not identify issues to be addressed and that ultimately resulted in dismissal of entire actions, violated due process], disapproved of on other grounds by *Presbyterian Camp & Conference Centers, Inc. v. Superior Court* (2021) 12 Cal.5th 493, 516, fn. 17; *Cordova v. Vons Grocery Co.* (1987) 196 Cal.App.3d 1526, 1531 [sua sponte dismissal because of the plaintiff's delay in prosecution under § 583.410 required the same prior notice and opportunity to oppose required for noticed defense motion to dismiss].)

16

The issuance of the Order striking the first amended complaint under section 436 did not violate Westbrook's due process rights.

### 2. *Striking First Amended Complaint Was Not Error*

We next address whether the court committed an abuse of discretion by striking the first amended complaint under section 436. (See *Leader*, *supra*, 89 Cal.App.4th at p. 612.)

Preliminarily, we note that Westbrook below challenged Chen's position— equivalent to the court's reason in the Order for striking the first amended complaint— that the filing of the first amended complaint violated the court's Prior Order because the allegations of the amended pleading differed completely from those in the original complaint. On appeal, he argues that the trial court erroneously held that the breach of fiduciary duty claim (second cause of action) was an entirely new claim not present in the original complaint. Westbrook, however, does not make the same argument in his appellate briefs concerning the breach of contract and breach of implied covenant causes of action. We may therefore treat Westbrook as having abandoned any argument that as to the contract claims, the filing of the first amended complaint did not constitute a violation of the Prior Order. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4.)[12]

It is clear from a comparison of the two pleadings that the trial court properly found that the first amended complaint was at variance with the terms of the Prior Order under which the court granted Westbrook leave to amend. The underlying transactions

---

[12] The issue of whether the trial court properly found that the first amended complaint violated the Prior Order because it asserted entirely new claims is directly relevant to our consideration (discussed in pt. B.3., *post*) of whether the court's denial of leave to amend was an abuse of discretion. For this reason, we will address whether the court erred in concluding that all three causes of action in the first amended complaint were new claims, notwithstanding Westbrook's abandonment of his position relative to the contract claims.

and agreements at issue in Westbrook's two complaints materially differed. The focal points of the original complaint were (1) a transaction in which Chen, while affiliated with Westbrook's company, WBREA, acted as agent for the Client that spanned from February 2019 to its closing in December 2019, out of which arose a commission dispute between WBREA, and Chen; and (2) the "Settlement Agreement" (i.e., commission check issued by WBREA from the Client transaction), which Chen allegedly breached by filing a complaint for arbitration. In contrast, the focal points of the first amended complaint were (1) Chen's conduct after she "disassociated herself from WBREA" in January 2020 and became affiliated with a new firm, Sand Hill, including her involvement in a transaction involving a WBREA client that closed in June 2020; and (2) the December 2018 independent contractor agreement between WBREA and Chen (the IC Agreement) which Chen allegedly breached primarily because of her actions occurring on or after January 2020 when she was no longer affiliated with WBREA.

Likewise, the three specific causes of action alleged in the two pleadings—while having the same or similar titles—were very different claims. In the breach of contract claim in the initial complaint, Westbrook alleged that he was damaged by Chen's breach of the "Settlement Agreement" by filing an arbitration complaint to relitigate the settled dispute. In contrast, Westbrook alleged in the breach of contract claim in the first amended complaint that Chen breached *the IC Agreement* by failing to return WBREA's "Property" (its proprietary information and files) after terminating her relationship with WBREA, misappropriating the "Property," using the "Property" for her and for Sand Hill's benefit, and soliciting prospective and existing clients of WBREA.

The claim for breach of duty of loyalty in the original complaint concerned Chen's alleged breach of a duty of loyalty to WBREA by "falsely demand[ing] WBREA to pay (questionable) to Client $7,000 as a credit while [Chen] knew that [the] Client[] expected several thousand less." In contrast, the claim for breach of fiduciary duty in the first amended complaint concerned Chen's breach of fiduciary duties to WBREA arising from

18

the IC Agreement. Those breaches of fiduciary duty consisted of the same alleged actions (occurring after Chen terminated her relationship with WBREA) that Westbrook claimed constituted breaches of the IC Agreement, as well as self-dealing, serving WBREA clients under contracts and misappropriating benefits derived from them, causing Sand Hill to possess WBREA's "Property," and failing to disclose to WBREA a transaction consummated in June 2020 involving a WBREA client.[13]

Finally, the claims for breach of implied covenant of good faith and fair dealing— the third cause of action in both pleadings—were very different. In the original complaint, Westbrook alleged that Chen breached the good faith covenant implied in the "Settlement Agreement" by "choosing not to honor [it] and by failing to comply with it shortly after entering into it." The dissimilar allegations in the first amended complaint are that Chen breached the good faith covenant implied *in the IC Agreement* by her conduct *after* termination of her relationship with WBREA. That alleged conduct consisted of her actions relative to WBREA's "Property" in failing to return it, misappropriating it, transferring it to Sand Hill, and using it for her (and Sand Hill's) benefit; of her serving WBREA clients under contracts and misappropriating benefits derived from them; and of her failing to disclose the June 2020 transaction involving a WBREA client.

"[W]hen a trial court sustains a demurrer with leave to amend, the scope of the grant of leave is ordinarily a limited one. It gives the pleader an opportunity to cure the defects in the particular causes of action to which the demurrer was sustained, but that is all. [Citation.]" (*Community Water Coalition*, *supra*, 200 Cal.App.4th at p. 1329.) In the Prior Order, the court, in granting leave to amend, made it clear that the amendment

---

[13] In addition to alleging (in seven paragraphs) various acts by Chen in breach of her fiduciary duties under the IC Agreement taken after she was no longer affiliated with WBREA, Westbrook alleged that Chen did not disclose material facts to WBREA concerning the Client transaction that closed in December 2019.

was limited to those three claims alleged and only as against Chen. The court below specifically cautioned Westbrook that under California law, "[a]bsent prior leave of court[,] an amended complaint raising entirely new and different causes of action may be subject to a motion to strike on the Court's own motion. [Citation.]" That is precisely the kind of amendment Westbrook accomplished here, by asserting entirely new claims, based upon new underlying facts (occurring, for the most part, after the filing of the original complaint), and founded on a contractual relationship different from the one relied on in the original complaint. "Following an order sustaining a demurrer . . . with leave to amend, the plaintiff may amend his or her complaint only as authorized by the court's order. [Citation.] The plaintiff may not amend the complaint to add a new cause of action without having obtained permission to do so, unless the new cause of action is within the scope of the order granting leave to amend. [Citation.] Here, the new cause[s] of action [were] not within the scope of the order granting leave to amend." (*Harris*, *supra*, 185 Cal.App.4th at p. 1023.)

The trial court correctly concluded that (1) Westbrook, in filing the first amended complaint, had "abandon[ed] the factual allegations of the original complaint"; (2) the first amended complaint "[could not] reasonably be understood as an amendment of the first, second and third causes of action alleged in the original complaint"; and (3) the amended pleading represented "clearly an attempt by [Westbrook] to allege three wholly new claims in place of those previously alleged." The trial court did not abuse its discretion by striking the first amended complaint under section 436 because it was not in conformity with the Prior Order granting leave to amend.

### 3. *Denial of Leave to Amend Was Proper*

Westbrook contends that the trial court erred when it denied leave to amend in its order striking the first amended complaint under section 436. He asserts that the court failed to determine whether any defect in the pleading could be cured by amendment before denying leave to amend. The argument lacks merit.

20

Westbrook's position is based upon the assertion that the trial court, in striking the first amended complaint under section 436 because of its nonconformity with the Prior Order, was required to make an evaluation of whether there was a reasonable possibility that he could amend the pleading to cure its defects. His position is based upon cases he cites in which the trial court had sustained a demurrer without leave to amend because the challenged pleading failed to state a cause of action. (See *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 506-507, disapproved of on other grounds by *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939, fn. 13; *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153-1154.) But here, the court struck the first amended complaint under section 436 because it was beyond the scope of the leave to amend as granted in the Prior Order. The court's ruling was not based upon an evaluation of whether each of the new causes of action in the first amended complaint failed to state facts sufficient to constitute a cause of action.[14] The

---

[14] Westbrook argues that the court erred in (supposedly) striking the breach of fiduciary duty cause of action of the first amended complaint based upon an erroneous finding that Chen owed no fiduciary duty to WBREA. A plain reading of the Order shows that the trial court did *not* strike the breach of fiduciary duty claim in the first amended complaint based upon a finding of no existing duty. Instead, the court struck "all three causes of action alleged in the [first amended complaint] on its own motion as not filed in conformity with the January 11, 2021 Order of the Court. (See CCP §436.)" This holding was preceded by approximately two pages of analysis regarding the first amended complaint's having been beyond the scope of the leave to amend stated in the Prior Order. After concluding that the pleading should be stricken, the court did "also note[]" that the second and third causes of action of the first amended complaint "both fail[ed] as a matter of law." Although the court made this observation and followed it with some discussion, there is nothing in the record that suggests that the court's reason for striking the amended pleading was based upon anything other than the first amended complaint having been "not filed in conformity with the [Prior] Order." We therefore need not address Westbrook's contentions regarding the viability of his breach of fiduciary duty claim. (See *Orange Unified School Dist. v. Rancho Santiago Community College Dist.* (1997) 54 Cal.App.4th 750, 757 [appellate court does "not review the validity of the trial court's reasoning but only the propriety of the ruling itself"].)

trial court therefore, did not, nor was it required to, evaluate whether there was a reasonable possibility that the pleading defect could be cured by amendment.

Rather, in striking the first amended complaint, the trial court was empowered to do so "upon terms it deem[ed] proper." (§ 436; see also § 472a, subd. (d) ["[i]f a motion to strike is granted pursuant to Section 436, the court may order that an amendment or amended pleading be filed upon terms it deems proper"].) Obviously, the fact that the court *may* permit an amendment after striking a pleading does not suggest it is required to do so. This is not an instance where Westbrook's pleading was stricken because it failed to state a cause of action but there was a reasonable possibility one could be stated by amendment. Nor was the pleading here stricken due to a technical defect that could be readily corrected, such that a "proper" term imposed by the court in striking the first amended complaint would be to permit the filing of a corrected pleading. (See, e.g., *Vaccaro v. Kaiman* (1998) 63 Cal.App.4th 761, 768 [omission of counsel's signature on first amended complaint]; *Perlman v. Municipal Court* (1979) 99 Cal.App.3d 568, 575 [failure to verify writ petition].)

Instead, this was an instance in which the first amended complaint was filed *in violation of* the Prior Order specifically limiting the nature of the permitted amendment. As discussed, *ante*, the first amended complaint, as compared with the original complaint, unquestionably contained entirely new allegations and causes of action, and the new claims were based upon an agreement and alleged wrongful conduct that were different from the agreement and alleged conduct stated in the original complaint. The amended pleading was plainly not authorized by the Prior Order.

Further, the backdrop under which this violation of the Prior Order occurred is highly relevant to evaluating whether the court abused its discretion in striking the first amended complaint "upon terms it deem[ed] proper." (§ 436.) In opposing Chen's demurrer to the original complaint, Westbrook indicated that if the court were inclined to sustain the demurrer, it requested leave to file an amended pleading. That proposed

22

amended pleading *named two additional defendants* and alleged *a total of 15 additional causes of action*. In effect, Westbrook proposed to convert a six-page, 45-paragraph pleading alleging five causes of action against one defendant into a 23-page, 189-paragraph pleading alleging 20 causes of action against three defendants. This tactic was met by the trial court in its Prior Order with a specific admonition that Westbrook, in amending his complaint, be careful to limit the new pleading to the three existing claims in the complaint for which leave to amend was granted. Rather than heeding that admonition, Westbrook filed the first amended complaint alleging three entirely new claims.

Under these circumstances, the trial court properly denied leave to amend. Instead, it stated in the Order that if Westbrook wished to allege claims against Chen unrelated to the ones alleged in the original complaint, he could file an appropriate motion for leave to amend with the court. This was a proper term under section 436 included in the Order striking the first amended complaint. Accordingly, we find no abuse of discretion in the denial of leave to amend. (See *Quiroz*, *supra*, 140 Cal.App.4th at pp. 1281-1282.)

### III.   DISPOSITION

The May 21, 2021 order striking the first amended complaint of appellant Vladimir Westbrook without leave to amend is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:


_____
DANNER, J.


_____
WILSON, J.


*Westbrook v. Chen*
**H049189**